Filed 12/29/25  P. v. Camacho CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D084857 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN163535) |
| ADRIAN GEORGE CAMACHO, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.[*]  Reversed and remanded with directions.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Joseph Schlesinger for California Appellate Project, as Amicus Curiae on behalf of Defendant and Appellant.

---

[*]      Retired Judge of the San Diego Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Rob Bonta, Attorney General, James William Bilderback II, Senior Assistant Attorney General, Holly D. Wilkens, Robin Urbanski and Meredith White, Assistant Attorneys General for Plaintiff and Respondent.

In 2005, a jury convicted Adrian George Camacho of the 2003 murder of Oceanside Police Officer Anthony Zeppetella, Jr., and found true special circumstance allegations that made Camacho eligible for the death penalty. The jury also found true an enhancement allegation that Camacho used and intentionally discharged a gun to commit the murder and convicted Camacho of possessing heroin for sale. After a penalty trial, the jury determined the appropriate penalty for Zeppetella's murder was death.

Thereafter, Camacho admitted he had served four prior prison terms that, at the time of his conviction, qualified as prior prison term enhancements under former Penal Code section 667.5, subdivision (b).[1] The trial court sentenced Camacho to death, and imposed an indeterminate prison term of 25 years to life for the firearm enhancement, plus three years for his heroin conviction, and four one-year terms for each prior prison term enhancement. The Supreme Court affirmed Camacho's judgment of conviction in its entirety on November 28, 2022, and issued its remittitur on February 21, 2023. (*People v. Camacho* (2022) 14 Cal.5th 77 (*Camacho*).)

After Camacho's judgment became final, in 2023, the California Department of Corrections and Rehabilitation (CDCR) identified Camacho as potentially eligible for relief under section 1172.75. The trial court appointed counsel for Camacho and issued on order to show cause. After briefing and a hearing, the trial court found Camacho was not eligible for resentencing under section 1172.75 because this was "not a case in which the prison priors

---

[1] Subsequent undesignated statutory references are to the Penal Code.

2

were lawfully imposed as part of a final judgment which then required the remedial mechanism provided by [section] 1172.75." Rather, "[b]efore the judgment became final, the prison priors were legally invalid and unauthorized." Thus, the trial court concluded that the sentence was unauthorized, and could be corrected at any time, and "should have been corrected before the judgment became final." Based on this reasoning, the court ordered the prior prison terms stricken.

On appeal from that order, Camacho argues the trial court erred because he is entitled to full resentencing under the plain language of section 1172.75. In response, the Attorney General asserts that the statute does not apply to defendants sentenced to death. As we shall explain, we agree with the Attorney General that section 1172.75 does not apply to Camacho's death sentence. However, because Camacho was also sentenced to an indeterminate term in addition to the death sentence, and because section 1172.75 applies by its terms to this aspect of Camacho's sentence, we conclude he is entitled to resentencing of the indeterminate term only.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of Camacho's crimes are not relevant to the issues on appeal, but we mention them briefly for context. In its opinion, the Supreme Court summarized the crime concisely: "At approximately 5:05 p.m. on June 13, 2003, uniformed Officer Tony Zeppetella of the Oceanside Police Department detained defendant Adrian George Camacho in a traffic stop. By 5:09 p.m., defendant had shot the officer no fewer than 13 times, beaten him as he laid wounded but conscious on the ground, and fled the scene. Despite receiving immediate medical attention, Officer Zeppetella died en route to the hospital." (*Camacho, supra*, 14 Cal.5th at p. 86.)

3

In 2005, a jury convicted Camacho of the first degree murder of Zeppetella (count 1; § 187, subd. (a)) and found true the special circumstances that Camacho intentionally killed a police officer performing his duties (§ 190.2, subd. (a)(7)) and did so to avoid being lawfully arrested (*id.*, subd. (a)(5)). The jury also found Camacho guilty of possessing heroin for sale (count 2; Health & Saf. Code, § 11351) and being a felon in possession of a firearm (count 3; § 12021, subd. (a)(1)). Finally, the jury found true an allegation that Camacho personally used and intentionally discharged a firearm to commit the murder (§§ 12022.5, subd. (a)(1), 12022.53, subd. (d)).

Following a penalty phase trial, the jury determined the appropriate penalty was death. After the jury rendered its verdict, Camacho admitted he had served four prior prison terms that qualified as prior prison term enhancements under former section 667.5, subdivision (b). On February 7, 2006, Camacho was sentenced to death. In addition, the court imposed an indeterminate term of 25 years to life for the firearm enhancement, a three-year term for count 2, and four 1-year terms for the four prior prison term enhancements. The court stayed the indeterminate sentence pending execution of the death sentence. The California Supreme Court affirmed the judgment in its entirety on November 28, 2022, and issued its remittitur on February 21, 2023. (*Camacho, supra*, 14 Cal.5th 77.)

On August 25, 2023, the trial court appointed counsel for Camacho after the CDCR identified him as someone potentially eligible for relief pursuant to section 1172.75 because he was serving a prison term that included time imposed for prior prison term enhancements. During a preliminary hearing in April 2024, the court stated that ordinarily an appellate court with jurisdiction over a nonfinal case like Camacho's at the time Senate Bill No. 136 went into effect would strike the prior prison terms

4

as invalid. The court also stated it was inclined to conclude that at the time the judgment became final it contained an unauthorized sentence, which should have been stricken, and to strike the terms without conducting full resentencing under section 1172.75. The court then set the matter for an order to show cause hearing, and directed the parties to address "why the petition shouldn't be dismissed for lack of jurisdiction under [Senate Bill No.] 483 or precluded from recalling [and] resentencing because the Court, as a matter of law, could find that in light of the previous proceedings, he's a danger to the community if his sentence were to be lowered."

Appointed counsel filed an opposition to the order, asserting Camacho was eligible for a full resentencing and explaining that section 1172.75 did not authorize inmates like Camacho to seek resentencing on their own motion. Rather, the process is triggered only by the CDCR and the statute's plain language required a full resentencing.

The District Attorney filed a reply to the opposition brief, asserting Camacho was not eligible for resentencing because of his capital sentence. The District Attorney also asserted that because Camacho's judgment was not final at the time Senate Bill No. 483 took effect on January 1, 2022, the prior prison terms were invalid before that point, and the Supreme Court's failure to strike the terms while it was considering the automatic appeal from the judgment was a clerical error. The District Attorney argued the trial court could correct that error by striking the four prior prison terms. The District Attorney also argued that section 1172.75 did not apply to capital sentences because its provisions included language that is not applicable to such cases. Further, the District Attorney asserted that, as applied to capital cases, section 1172.75 conflicted with the voter-enacted death penalty

5

sentencing scheme set forth in sections 190.1 through 190.5, and section 1509, which was enacted by a separate, subsequent voter-initiative.

On September 6, 2024, at the hearing on the order to show cause, the parties reiterated the arguments set forth in their briefing. At the conclusion of the hearing, the trial court denied a full resentencing, stating in its order that Camacho's case was "not a case in which the prison priors were lawfully imposed as part of a final judgment which then required the remedial mechanism provided by [section] 1172.75." Instead, the trial court ordered the prior prison term enhancements stricken.

Camacho filed a timely notice of appeal.

DISCUSSION

As stated, Camacho asserts the trial court erred by concluding he was not entitled to full resentencing because the Supreme Court, in essence, made a clerical error by not striking his prior prison terms while his direct appeal was pending in that court. He argues that section 1172.75 applies to his case and, thus, he is entitled to full resentencing. The Attorney General responds that because Camacho was sentenced to death he is not eligible for resentencing and the trial court appropriately struck the prior prison enhancement terms as unauthorized.

I

*Legal Standards*

Prior to January 1, 2020, section 667.5, subdivision (b), required the court to impose a one-year enhancement for each prior prison term the defendant had served, unless the defendant had remained free of custody for the preceding five years. (§ 667.5, former subd. (b); *People v. Garcia* (2024) 101 Cal.App.5th 848, 854 (*Garcia*).) Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1) amended

6

section 667.5 to limit the enhancement to prior prison terms for sexually violent offenses. (§ 667.5, subd. (b); *Garcia*, at p. 854.) After Senate Bill No. 136 took effect, courts applied the legislation retroactively to cases that were not yet final on January 1, 2020. (*People v. Christianson* (2023) 97 Cal.App.5th 300, 309; see *People v. Jennings* (2019) 42 Cal.App.5th 664, 668.)

In 2021, while Camacho's automatic appeal to the Supreme Court was still pending, the Legislature enacted Senate Bill No. 483. The legislation, which became effective on January 1, 2022, made the change effected by Senate Bill No. 136 retroactive to "all persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements." (Stats. 2021, ch. 728, § 1.) "Senate Bill No. 483 added section 1171.1, later renumbered as section 1172.75, subdivision (a), which states: 'Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense ... is legally invalid.' (See *Garcia, supra*, 101 Cal.App.5th at pp. 854–855.) Section 1172.75, subdivision (b), require[d] the [CDCR] to identify individuals serving terms that include no-longer-valid enhancements. After the superior court verifies a judgment includes an invalid enhancement, the court must 'recall the sentence and resentence the defendant.' (§ 1172.75, subd. (c).)" (*People v. Dixon* (2025) 112 Cal.App.5th 236, 243, review granted Oct. 22, 2025, S292223 (*Dixon*).)

"Section 1172.75, subdivision (d)(2), provides the court must 'apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.' ' "By its plain terms, section 1172.75 requires a full resentencing, not merely that the

7

trial court strike the newly 'invalid' enhancements." ' (*Garcia, supra*, 101 Cal.App.5th at p. 855.) 'The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.' (§ 1172.75, subd. (d)(3).)" (*Dixon, supra*, 112 Cal.App.5th at p. 243, review granted.)

Insofar as Camacho's claims require us to interpret section 1172.75, they present questions of statutory interpretation and construction subject to de novo review. (*People v. Munoz* (2025) 110 Cal.App.5th 499, 506, review granted June 25, 2025, S290828; *People v. Harring* (2021) 69 Cal.App.5th 483, 495.) " ' "Statutory construction begins with the plain, commonsense meaning of the words in the statute, ' "because it is generally the most reliable indicator of legislative intent and purpose." ' [Citation.] A statute is not to be read in isolation, but construed in context and ' "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' [Citation.] ' "If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning." ' " ' " (*Munoz,* at p. 506.) However, " ' " '[i]f the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " ' " (*People v. Brown* (2023) 14 Cal.5th 530, 536.)

## II

*Analysis*

### A

*Section 1172.75 Does Not Apply To Death Sentences*

We agree with the Attorney General that the language of section 1172.75 and the provision's legislative history show the statute does not apply to death sentences. We also agree with the Attorney General that common sense precludes application of the statute to such sentences.

With respect to the statute's language, subdivision (b) states that the secretary of the CDCR is directed to identify "those persons in their custody currently *serving a term* for a judgment that includes an enhancement" under former section 667.5, subdivision (b). (§ 1172.75, subd. (b), italics added.) As the Attorney General points out, a death sentence is not a term of imprisonment. Rather, the convicted defendant is held indefinitely pending execution of the death sentence.

Execution of the death penalty is governed by Title 3 of Part 3 of the Penal Code. (§§ 3599 et seq.) Sections 3600, 3601 and 3602 govern delivery and detention of defendants sentenced to death, as well as the housing and transfer of such inmates. Section 3600—titled "Delivery and detention of male person pending execution; transfer and return of inmate"—states, "Every male person, upon whom has been imposed the judgment of death, shall be delivered to the warden of the California state prison designated by the department for the execution of the death penalty. The inmate shall be kept in a California prison until execution of the judgment. The department may transfer the inmate to another prison which it determines to provide a level of security sufficient for that inmate. The inmate shall be returned to the prison designated for execution of the death penalty after an execution

9

date has been set." (See also §§ 3601, 3602 [providing for the detention of females sentenced to death].) These provisions support our interpretation that a death row inmate is not serving a *term* to which section 1172.75 applies. Rather, these statutes show the inmate is held indefinitely while he or she awaits execution of the death sentence, and support our conclusion that the capital sentencing scheme is outside the determinate and indeterminate term scheme to which Senate Bill No. 483 applies.

In addition, subdivision (d), which governs resentencing for eligible inmates, explains that resentencing thereunder must result "in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) The same subdivision explains that in resentencing, "[t]he court shall apply the sentencing rules of the Judicial Council" and that "[u]nless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle *term* unless there are circumstances in aggravation that justify the imposition of a *term of imprisonment* exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(2), (d)(4), italics added.) These provisions similarly show the statute is intended to apply to sentences of *terms of imprisonment*, to which the Judicial Council's sentencing rules apply, and not capital punishment, to which they do not.[2]

In addition, the legislative history of Senate Bill No. 483 establishes the Legislature did not intend for the provision to implicate a judgment of

---

[2]     Capital sentencing is governed exclusively by sections 190.3 and 190.4.

10

death.  That history shows the statute was enacted to address a common sentencing enhancement that adds "one year for each prior prison or felony jail term" and to "ensur[e] that no one is serving time on outdated rules." (Sen. Com. on Pub. Safety, April 27, 2021, at pp. 2–3.)  The bill's author stated, "A robust body of research finds that long prison and jail sentences have no impact on public safety, yet are documentably injurious to families and communities—particularly Black, Latino, and Native Americans in the United States and California." (*Ibid*.)  Further, the author explained a legislative finding that "[p]eople returning from incarceration face significant barriers to finding jobs and housing.  Family members of incarcerated people struggle with crushing debt from court costs, visitation and telephone fees, and diminished income.  The longer the sentence, the more severe these problems tend to be, and the tougher it is for societal reintegration." (*Id*. at p. 3.)

The bill's author also explained the effect of the change "will modestly reduce prison and jail populations and advance fairness in our criminal legal system." (Sen. Com. on Pub. Safety, *supra*, at p. 3)  A subsequent analysis of the legislation by the Senate appropriations committee similarly stated it would result in "reduced state incarceration costs for individuals for whom the courts invalidate sentence enhancements and who, absent this measure, would be serving their full term." (Sen. Comm. on Appropriations, analysis of Sen. Bill No. 483, May 10, 2021, at p. 1.)  A later Senate floor analysis of the law stated that in "recognition of the harms that long periods of incarceration have on the community safety and well-being," the law would "retroactively apply the elimination of those enhancements to people currently held in prisons and jails, ensuring that no one is serving time based on outdated rules." (Sen. Rules Com. on Sentencing: Resentencing to Remove Sentencing

11

Enhancements, Sept. 9, 2021, at p. 4.) The author also indicated that "SB 483 applies the law equally by retroactively applying California's elimination of ineffective three-year and one-year sentence enhancements." (*Id*. at p. 5.)

As the Attorney General points out, these legislative findings were directed to shortening prison sentences—specifically, eliminating the one and three-year sentence enhancements—not modifying a judgment of death. The legislative findings relate to the negative impact lengthy sentences have on defendants' ability to reintegrate into society, as well as community safety. They note the challenges faced by the families of those serving long sentences, the cost saving aspect of the bill, and the resulting reduction in prison and jail populations. *None* of these findings relate to inmates serving a death sentence, who have no possibility of release from prison. (See *People v. Millsap* (2025) 114 Cal.App.5th 368, 382 (*Millsap*) ["Resentencing in this type of case would not further these purposes or the intent underlying section 1172.75."].)

Camacho, like all capital defendants, was found guilty of a special circumstance that mandated a sentence of either death or life in prison without the possibility of parole. The trial court cannot impose any ameliorative statutes that would reduce a death sentence to life without the possibility of parole. Put simply, legislation passed to improve outcomes for

incarcerated individuals reentering society does not apply to a sentence of death. This is a common-sense construction of section 1172.75.[3]

---

[3] Two recent decisions have addressed the issue of whether a trial court may recall and resentence a death-sentenced defendant under section 1172.75 while a direct, automatic appeal remains pending in the Supreme Court. In *Dixon, supra*, 112 Cal.App.5th 236, review granted, the defendant's direct appeal of a capital sentence was pending in the Supreme Court when the CDCR identified him as eligible for recall and resentencing under section 1172.75. (*Id*. at p. 240.) The trial court "ruled Dixon was not eligible for resentencing because [it had previously] stayed execution of Dixon's enhancements." (*Ibid*.) Dixon appealed, asserting he was eligible for full resentencing. The People argued in response that (1) the trial court did not have jurisdiction to consider the case while Dixon's automatic appeal remained pending in the Supreme Court, (2) "individuals serving a death sentence are not eligible for resentencing under section 1172.75," and (3) "section 1172.75 does not apply to enhancements that were stayed." (*Ibid*.)

The court held that the trial court did have jurisdiction to resentence Dixon on the non-death sentence portion of his judgment, which included two consecutive terms of 25-years-to-life for two rape convictions (committed five years before the capital murder), one year for a firearm enhancement under section 12022, subdivision (b)(1), and, like here, consecutive one-year terms for four prior prison term enhancements. (*Dixon, supra*, 112 Cal.App.5th at p. 241, review granted.) The court rejected Dixon's argument that the trial court's resentencing should include the death sentence, holding that section 1172.75 could not override the electorate's passage of section 1509, which the court held provided the " 'exclusive procedure for collateral attack on a judgment of death.' " (*Id*. at p. 249.) The court reversed the trial court's decision finding Dixon ineligible for relief, and directed the court to "strike Dixon's prior prison term enhancements, and resentence Dixon on the rape convictions and the firearm enhancement, in accordance with section 1172.75." (*Id*. at p. 250.) The Supreme Court granted review of *Dixon* on October 22, 2025, S292223.

13

After briefing was completed in this case, we granted the application of the California Appellate Project (CAP) to file a brief as amicus curiae in support of Camacho.  In its brief, CAP points to a more recent amendment to section 1172.75, Senate Bill No. 285, to support its assertion that section 1172.75 applies to inmates sentenced to death.  Senate Bill No. 285 amended

---

*Millsap, supra,* 114 Cal.App.5th 368, issued on September 11, 2025, reached the opposite conclusion, affirming the trial court's determination that it lacked jurisdiction to resentence the capital defendant while his automatic appeal to the Supreme Court remained pending.  The court held that "[h]ad the trial court stricken the now-invalidated enhancement pending disposition of defendant's direct appeal, it would have 'interfered' with the [Supreme] Court's jurisdiction over the judgment." (*Id*. at p. 380.)  Further, the court noted the futility of resentencing by the trial court under section 1172.75 "from a criminal history that is nonfinal, currently disputed, and subject to material change by the Supreme Court.  If the [Supreme] Court subsequently modifies defendant's convictions to his benefit, resentencing on remand may take those modifications into account.  [Citations.]  If the [Supreme] Court affirms any of defendant's eight death sentences, the resentencing done by the trial court may be for naught." (*Id*. at p. 382.)

A more recent decision, *People v. Cain*, issued by the Second Appellate District, Division Six on December 8, 2025, considered the trial court's conclusion that the defendant, whose death judgment became final by the Supreme Court's affirmance in 1995, was eligible for full resentencing, including reconsideration of the death penalty, under section 1172.75. (*People v. Cain* (Dec. 8, 2025, B342911) __ Cal.App.5th __ [2025 Cal.App. Lexis 807].)  The Attorney General appealed the trial court's ruling, and the Second District reversed.  After the Court of Appeal first concluded the order was appealable, it held the Legislature "did not intend that section 1172.75 would apply to death penalty cases." (*Ibid*.)  The court then rejected the respondent's argument that the enactment of subdivision (f) showed an intent to exclude all death penalty judgments from resentencing, holding—like *Dixon*—that section 1509 prevented a collateral attack of that judgment under section 1172.75. (*Ibid*.)  *Cain* also concluded that the defendant was eligible for resentencing on the noncapital portion of her sentence. (*Ibid*.)

Because the Attorney General has not taken a position in this case on whether resentencing constitutes a collateral attack on a judgment, such that section 1509 would apply here, we express no opinion on this point.

section 1172.75 by adding subdivision (f). This new provision states, "Commencing on January 1, 2025, an individual who has been convicted of a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code and sentenced to death or a life term without the possibility of parole, who, as of January 1, 2025, has not had their judgment reviewed and verified by the sentencing court as provided in subdivision (c), is not eligible for recall and resentencing under this section. This subdivision does not apply retroactively."

CAP asserts this change to the law "confirms the Legislature's intent that" death-sentenced defendants who were not also convicted of a sexually violent offense "are entitled to the benefit of section 1172.75." However, because the new provision was not in effect at the time the trial court issued its OSC and corrected Camacho's sentence on September 6, 2024, and the provision explicitly does not apply retroactively, we conclude the provision does not apply in this case and decline to reach Amicus's assertion that the new law shows a prior Legislature's intent to exclude only those defendants who were sentenced to death *and* who were also convicted of a sexually violent offense. (See e.g., *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 52 ["The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law."]; see *People v. Floyd* (2003) 31 Cal.4th 179, 188 [" 'The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' "].)

B

*Section 1172.75 Applies to Camacho's Indeterminate Sentence*

15

While we hold that section 1172.75 does not apply to Camacho's death sentence, the law is less clear with respect to its impact on the indeterminate sentence imposed and stayed by the trial court. As discussed, the trial court concluded that section 1172.75 did not apply to this case because at the time the law became effective, Camacho did not have a final judgment that included invalid prison priors. Rather, at that point, Camacho's direct appeal remained pending, and the Supreme Court had the ability to strike the enhancement terms under the authority of *In re Estrada* (1965) 63 Cal.2d 740 to give Camacho the benefit of the ameliorative changes made by Senate Bill No. 136. The trial court concluded that because of this procedural posture, the appropriate relief was to strike the prison prior terms.

On appeal, Camacho argues simply that because section 1172.75 does not explicitly exempt inmates sentenced to death, he is entitled to a full resentencing under the statute. As discussed in the prior section, we disagree with Camacho's assertion that section 1172.75 gives the sentencing court the authority to revisit his death sentence. The statute's language, legislative history, and common sense lead us to conclude it does not. However, we do conclude that in this peculiar situation, Camacho is entitled to resentencing with respect to the indeterminate sentence imposed and stayed by the trial court in 2006.[4]

The Attorney General argues the trial court's decision to strike the prior prison terms was not error. He asserts that although generally when an error affects part of a sentence full resentencing is appropriate, where "an

---

[4]    The Supreme Court has now clarified that section 1172.75 applies to prior prison enhancement terms that were imposed and stayed, in addition to those imposed and executed. (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1068.)

16

enhancement is erroneously imposed and the trial court has already imposed the maximum possible sentence, a remand for resentencing is unnecessary." (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 773.)  For this reason, the Attorney General contends the trial court can strike the erroneous enhancement and affirm the judgment as modified, just as the court did here.

We are not persuaded that this course of action is appropriate in this case, since section 1172.75 applies to inmates, like Camacho, with final sentences.  The parties agree Camacho's judgment was made final by the Supreme Court's affirmance and that the Supreme Court had the authority to strike the prior prison terms before its decision and remittitur were issued.  While the Attorney General asserts its "position is that defendants who are sentenced to death are categorically excluded from the recall and resentencing procedures of section 1172.75," he also tacitly recognizes resentencing on the now-final indeterminate term is available.

Specifically, in his answer to CAP's amicus brief, the Attorney General states that capital defendants with cases *still pending* before the Supreme Court after the passage of Senate Bill Nos. 136 and 483 "have only one avenue for relief for their now-invalid prior prison term enhancements— asking that they be stricken under *Estrada*."  He next states this is "because the California Supreme Court has direct authority under section 667.5, subdivision (b), to strike any now-invalid prior prison term enhancements, as well as to remand to the trial court if there are other ameliorative statutes that *would apply to the non-capital portions of a sentence*.  (See *People v. Morelos* (2022) 13 Cal.5th 722, 768–770 [striking former section 667.5,

17

subdivision (b), enhancement of capital defendant on appeal].)"[5] (Italics added.)

Because Camacho's case is no longer still pending and his sentence is now final, and because the Supreme Court did not address the prior prison enhancement terms that became invalid while the automatic appeal was pending, the non-capital portion of his sentence is subject to the current version of section 1172.75, not Senate Bill No. 483. Thus, a limited remand for the trial court to recall this portion of the sentence and resentence Camacho in accordance with current section 1172.75 is appropriate.

---

[5] In *People v. Morelos, supra*, 13 Cal.5th 722, an automatic appeal of a capital sentence, the parties agreed that ameliorative sentencing changes that gave trial courts discretion to strike previously mandatory firearm enhancements under section 12202.5, and prior serious felony enhancements under section 667, subdivision (a), applied retroactively to the non-capital portion of the defendant's sentence and the Supreme Court ordered a limited remand to the trial court to consider whether to exercise its new discretion under these provisions. (*Id*. at pp. 768–769.) The court also struck a prior prison term enhancement in accordance with Senate Bill No. 136 and *Estrada*, which was applicable to the defendant's non-final case. (*Id*. at p. 769.)

18

DISPOSITION

The order striking Camacho's prior prison term is reversed. The trial court is directed to vacate its order, strike Camacho's prior prison term enhancements, and resentence Camacho with respect only to the indeterminate term previously imposed and stayed, consisting of 25 years to life for the firearm enhancement and three years for the heroin conviction, in accordance with section 1172.75. The court is also directed thereafter to prepare a new abstract of judgment and send it to the Department of Corrections and Rehabilitation.

McCONNELL, P. J.

WE CONCUR:


DO, J.


KELETY, J.

19